# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CRIMINAL NO. 1:04CR71

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | MEMORANDUM AND ORDER |
| ) | |
| RENEE FRIEDMAN JONES ) | |

**THIS MATTER** is before the Court on the Defendant's motions for a new trial and to compel the filing under seal of a report prepared by the North Carolina State Bureau of Investigation (SBI).

## I. THE MOTION FOR A NEW TRIAL

**A.  Standard of Review**

Rule 33 provides that the trial court may, on a defendant's motion, grant a new trial "if the interest of justice so requires." **Fed. R. Crim. P. 33.** The Fourth Circuit has "observed that a court 'should exercise its discretion to grant a new trial 'sparingly,' and that it should do so 'only when the evidence weighs heavily against the verdict.'" *United States v. Perry*, 335 F.3d 316, 321 (4th Cir. 2003), *cert. denied*, 540 U.S. 1185 (2004) (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997) and citing *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)).

> Rule 33 allows a district court to grant a new trial in the interest of justice. When the motion attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence. In deciding a motion for a new trial, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government. Thus, it may evaluate the credibility of the witnesses. When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial.

***United States v. Campbell*, 977 F.2d 854, 860 (4th Cir. 1992).**

**B.     Discussion**

The Defendant's first argument is that the exclusion of certain evidence during the trial warrants a new trial. Evidentiary rulings are reviewed for an abuse of discretion. ***United States v. Leftenant*, 341 F.3d 338, 342 (4th Cir. 2003), *cert. denied*, 540 U.S. 1166 (2004).** According to the Defendant, at some time during 2000, Gary Ramsey, who was in charge of the Enforcement Section of the North Carolina Department of Motor Vehicles (DMV), instructed her to replace an employee in the Marshall, North Carolina, office who was suspected of fraudulently issuing drivers' licenses to Hispanic individuals. While there, it is alleged that the Defendant uncovered significant evidence implicating this individual. The Defendant also claims that she was contacted by Miguel Rodriguez, a translator who solicited the Defendant to provide a fraudulent driver's license in exchange for $2,500 which he paid to the Defendant. The Defendant turned over the money to the SBI and convinced Rodriguez to cooperate with the SBI. She also attempted to convince Isidro Ramos to cooperate with the SBI but he failed to attend a scheduled meeting with the agent. According to the Defendant's motion, despite her repeated attempts to involve the SBI and the Federal Bureau of Investigation (FBI), no one would listen to

her and she was later prosecuted by the United States Attorney in retaliation for uncovering illegal behavior in the Marshall office. She claims that the exclusion of certain evidence during her trial prevented her from establishing this defense.

The Government presented evidence during the Defendant's trial which showed that she was, herself, involved in the fraudulent production of driver's permits and licenses. Isidro Ramos testified at trial that he and the Defendant had an arrangement whereby they charged illegal aliens $500 for a fraudulent driver's permit and $1,000 for a full driver's licence. The Defendant, according to Ramos, produced the fraudulent documents while Ramos collected the money from the aliens. Ramos and the Defendant split the money between them. He testified that they began this scheme in July 2003.

However, the Defendant testified about her participation in an "undercover" operation in the Marshall office and her attempts to enlist the SBI and FBI. First, she testified that Gary Ramsey sent her to Marshall to do a criminal investigation and she kept a diary of the evidence of criminal wrongdoing which she uncovered. She also testified that she received letters of commendation for this work. The Defendant testified that when she came back to the Asheville office, she reported to the new Enforcement chief, Jackie Holland, and advised him that she had been contacted by Ramos who offered to pay her $5,000 per week for two fraudulent licenses per day. Holland kept assuring her that he was waiting for the SBI to become involved. The Defendant testified that she believed the DMV was covering up its fraudulent activities. She testified about her attempts to involve the FBI, which declined to use her as an undercover agent, and introduced a letter from Holland in which he advised the authorities that the Defendant was willing to work with them. The Defendant also testified to conversations which she had with an

Assistant United States Attorney as well as FBI agents during which she advised them of the fact that Ramos was pressuring her to sell him fraudulent driver's licenses.

The Defendant also introduced her performance records from the DMV which showed outstanding performance. Jackie Holland testified he listened to the Defendant's claims, connected her with the SBI and told her to be careful. He testified that he wrote a letter concerning her attempts to work in an undercover capacity. She reported to him that no authorities seemed to be interested in what she had to say. Two other DMV employees testified that they knew the Defendant had offered to work undercover. Numerous character witnesses testified to her employment as being beyond reproach.

The Court does not find that the Defendant's motion is well founded. Contrary to her representations, evidence was presented about her investigatory efforts both in the Marshall office and otherwise. Testimony was admitted concerning letters of commendation and performance appraisals. While not every piece of evidence which the Defendant sought to be admitted was in fact admitted, there was ample evidence from which the jury could have concluded, had it believed the Defendant, that she was the target of retaliation for her efforts to uncover fraudulent activity at the DMV.[1]

Next, the Defendant claims her attorney's opening statement was prejudicially interrupted and terminated. Counsel admits, however, that he "spent much of the opening statement which was permitted dealing with the involvement of the defendant in the investigation in the Marshall office. This was done without objection until well into the statement[.]" **Defendant's Motion**

---

[1] It does bear noting, however, that the Defendant does not explain in what manner or for what reason the United States Attorney would participate in such a retaliatory scheme.

**for New Trial, filed November 17, 2004, at 4.** When the Government objected to the relevance of the argument, the Defendant claims the objection was sustained and her attorney was then told that his time for opening argument had expired.

The objection was made by the Government because the Defendant's attorney was about to discuss a grand jury investigation. However, by that time the defense attorney had used his entire ten minutes and as a result, counsel was so advised. Prior to the beginning of the trial, both sides were advised that a ten minute time limit was imposed for opening statements. It is not an unusual occurrence, in cases over which the undersigned presides, for an attorney to be warned or advised that the time for his or her opening or closing statement is about to expire or has expired.

Defendant's next argument is based on the fact that a newspaper article about the trial was published on the second day of trial. However, defense counsel does not claim that any juror actually read the article; instead, he claims that "[u]ndoubtedly, many members of the jury had access to the article prior to appearing in Court that morning." *Id.*, **at 5.** And, he claims that the Court drew attention to the article by directing the jury not to read the paper.

In the preliminary instructions, during jury selection and at the close of court during each day of the trial, the jury was admonished not to entertain outside information about the trial, regardless of the form thereof. The law assumes that, except in extraordinary circumstances, jurors follow a court's instructions. *Jones v. Polk*, 401 F.3d 257, 264 (4th Cir. 2005); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *McHone v. Polk*, 392 F.3d 691 (4th Cir. 2004); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997).

Finally, the Defendant claims that the indictment contained language which was prejudicial. The indictment alleged that in March 2004, Isidro Ramos was arrested for possession with intent to distribute cocaine and marijuana and was subsequently indicted with other named individuals. Paragraph 2 of the introductory paragraphs provides:

> Ramos, Resendiz, Bustillo, Santos-Gonzalez and Lear provided statements to the Drug Enforcement Administration (DEA) about their drug conspiracy and related criminal activity, *most specifically the procurement of illegal North Carolina driver's licenses and North Carolina Identification cards through Renee Friedman Jones, an employee of the Department of Motor Vehicles*.

**Bill of Indictment, filed August 2, 2004.** The indictment also contains specific details of the Defendant's interactions with Ramos and Resendiz, both of whom would escort individuals to the DMV to meet with the Defendant. The details of the Defendant's meeting with Lear and her provision to him of a fraudulent driver's license are also alleged.

Although this is the only paragraph to which the Defendant now objects, counsel filed a motion prior to trial asking the Court to "review introductory paragraphs 1-18 of the sealed bill of indictment and to strike the portions thereof which are improper and immaterial." **Defendant's Motion to Strike Portions of Sealed Bill of Indictment, filed August 9, 2004.** In ruling on the motion, it was noted that

> [i]t is clearly not the prerogative of the Court to "review" the wording of bills of indictment which have been passed on by the grand jury. While Federal Rule of Criminal Procedure 7(d) allows a court to strike surplusage from an indictment, to grant the Defendant's broad request "would require the court to identify the offense which the grand jury intended to charge and delete the rest of the text of the indictment. Thus, the court would in essence rewrite the indictment. The Sixth Amendment restricts the United States from altering indictments of its own volition. The courts are not free to do so either." *United States v. Pleasant*, 125 F.Supp.2d 173, 184 (E.D. Va. 2000) (citations omitted).

Defendant specifically objects only to paragraphs 4 and 16 of the bill of indictment, claiming they contain inflammatory and unnecessary language.  In paragraph 4, it is alleged that an accomplice testified before the grand jury that he met the Defendant at the office of the North Carolina Department of Motor Vehicles in Marshall, North Carolina.  In paragraph 16, it is alleged that the Defendant made deposits into her bank accounts of the proceeds of the crime charged which is described as a conspiracy to issue false identification cards.  Defendant objects because she has not been charged with conspiracy.

> Paragraphs at the beginning of an indictment which explain the scheme of the substantive offense and provide a general factual background are not surplusage but useful and accurate descriptions thereof.  *United States v. Hartsell*, 127 F.3d 343, 353 (4th Cir. 1997).  Nor is the blanket allegation that these paragraphs are inflammatory sufficient to show prejudice.  *Id.*

**Order, filed August 19, 2004.**  The Court finds the wording of the previous ruling continues to be appropriate.

## II. MOTION TO COMPEL THE FILING UNDER SEAL OF THE SBI REPORT

Included in the Government's open file was a report prepared by the SBI concerning its investigation of the DMV office operated in Marshall, North Carolina.  At trial, the undersigned ruled that evidence of this investigation into the conduct of Monica Cody, who worked at that office, was not relevant to the charges pending against the Defendant.  Nonetheless, the Defendant introduced at trial ample evidence concerning that investigation and her part therein.  She now seeks to supplement the record with the entire SBI report so that, on appeal, the Fourth Circuit may determine whether it was error to exclude the evidence at issue.  The undersigned finds that the report should be filed under seal so that the appeals court may make a determination concerning the evidentiary rulings.

## III.  ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for a new trial is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the Defendant's motion to compel is **ALLOWED**, and the Government shall file under seal the SBI report contained in the open file of this action forthwith.

**Signed: June 22, 2005**

Lacy H. Thornburg
United States District Judge