IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CRIMINAL NO. 1:04CR71

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | **O R D E R** |
| | ) | |
| RENEE FRIEDMAN JONES | ) | |

**THIS MATTER** is before the Court on the Government's motion to dismiss the petition of Pola Friedman.

On November 5, 2004, a jury found the Defendant guilty of all seven counts of the bill of indictment filed on August 2, 2004. She thus stands convicted of producing illegal identification documents, money laundering, and making a false statement to a federal agency, in violation of 18 U.S.C. §§ 1028(a), 1956(a)(1)(B)(i), 1957, and 1001. Testimony was received during the trial from individuals who alleged the Defendant was paid significant sums of cash in return for making false identification documents provided to illegal aliens. Testimony was also received to the effect that the Defendant paid $30,000 in cash for the purchase of a lot located at 15 Village Creek Drive in a housing development known as Village Creek West. The bill of indictment contained a notice of forfeiture pursuant to 18 U.S.C. § 982; and on January 11, 2005, a preliminary order of forfeiture was entered.[1] Pursuant to that Order, real property identified as 15

---

[1] That statute provides that the "court, in imposing sentence on a person convicted of" money laundering "shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." **18 U.S.C. § 982(a)(1).** The statute also requires the court to order forfeiture of "any property constituting, or

Village Creek Drive, Asheville, North Carolina, was preliminarily ordered forfeited as the proceeds of the illegal activity for which the Defendant was convicted or was involved in or traceable to the illegal money paid to the Defendant.

On February 11, 2005, the Defendant's mother, Pola Friedman (Friedman) filed a petition pursuant to 21 U.S.C. § 853(n).[2] Friedman averred that beginning in January 1999, she took money from her checking account and gave it to her daughter for use in purchasing a home. She claims that she gave her daughter a total of $12,250 for this purpose.

> Under the criminal forfeiture statute, a third party may petition for a hearing to adjudicate its alleged interest in property to be forfeited. At that hearing, both the petitioner and the government are entitled to present evidence with the burden ultimately on the petitioner to prove her claim by a preponderance of the evidence. Notwithstanding this statutory scheme, courts have determined that a hearing is not always necessary to adjudicate a third party's claims. Where a petitioner is not able to demonstrate a *prima facie* entitlement to relief, courts have routinely dismissed third-party petitions without a hearing. . . . In 2000, however, Congress adopted Federal Rule of Criminal Procedure 32.2 governing proceedings relating to criminal forfeiture, including third-party petitions. . . . Under the new Rule 32.2, when a third party files a petition asserting an interest in property to be forfeited, the court must conduct an "ancillary proceeding." That ancillary proceeding, although occurring in the context of criminal forfeiture, closely resembles a civil action[.]

**Pacheco v. Serendensky, 393 F.3d 348, 351-52 (2d Cir. 2004) (internal citations omitted).** In the ancillary proceeding, "the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." **Fed. R. Crim. P. 32.2(c)(1)(A).** For

---

derived from, proceeds the person obtained directly or indirectly," from making false identification documents. **18 U.S.C. § 982(a)(2)(B).** And, the statute provides for the forfeiture of "any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, as a result of" making false statements. **18 U.S.C. § 982(a)(3)(B).**

[2]That statute provides that a third party may assert a legal interest in the property and petition for a hearing to adjudicate the validity of the interest. **21 U.S.C. § 853(n)(2).**

purposes of such a motion, however, the allegations set forth in the petition must be assumed to be true. *Id.*

> Under the statute, one of two conditions must adhere for an intervenor to receive relief. The intervenor must either (a) have an interest in the property that is superior to the criminal defendant's because it arose prior to "the time of the commission of the acts [that] gave rise to the forfeiture," or (b) be a "*bona fide* purchaser for value" of the property who was "reasonably without cause to believe that the property was subject to forfeiture" at the time of purchase.

*Pacheco*, 393 F.3d at 353 (quoting 21 U.S.C. §§ 853(n)(6)(A), (B)). The Government notes that only the first condition is involved in this case, and Friedman does not disagree.

The evidence at trial showed that the arrangement for which the Defendant was convicted began in mid-2003. In March 2004, the Defendant entered into a contract to purchase the land in question and for the construction of a residence for a total contract price of $225,000. On February 21, 2004, she made an earnest money deposit of $500 cash. On March 5, 2004, she made another payment of $29,500 in cash to the developer. Friedman was not a party to the contract. On March 8, 2004, a deed was granted to the Defendant for the property at issue. Friedman was not a party to the deed.

Defendant's position is that her mother gave her the money in order to save for a home where they would both live. Friedman also testified during the trial that she gave her daughter checks every couple of weeks which the Defendant cashed and kept to save for the house. Friedman did not know how much money the Defendant was herself saving and did not question the issue. Testimony from the proposed builder was to the effect that the Defendant was taking care of her mother and thus, wanted her mother close by or living with her so that it would be easier to take care of the elderly mother.

This, the Defendant claims, constitutes a resulting trust in favor of Friedman in the amount of $12,250. The Government responds that Friedman merely made gifts to her daughter or became a general creditor.

> The term "legal interest" is not defined within § 853 so [the court] must determine whether Congress intended to include the interest of a general creditor within the scope of that term. We begin with the "assumption that the legislative purpose is expressed by the ordinary meaning of the words used." The Supreme Court has held that the term "interest" "comprehends all forms of real and personal property." The Court referred with approval to Black's Law Dictionary's broad construction of "interest" as "'[t]he most general term that can be employed to denote a right, claim, title or legal share in something.'" Black's Law Dictionary defines a "legal interest" as an "interest in property or in claim cognizable at law in contrast to equitable interest." Thus the term "legal interest" encompasses all legally protected rights, claims, titles, or shares in real or personal property.

***United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962); *Russello v. United States*, 464 U.S. 16, 21 (1983)) (other quotations and citations omitted) (footnote omitted).** Friedman "does not argue that [she] was the *bona fide* purchaser of [the property]. Thus [she] must demonstrate that [she] had "a legal interest" in the lot[] "at the time [it was] forfeited." ***In re Bryson*, 406 F.3d 284, 290 (4th Cir. 2005) (citing *United States v. Schecter*, 251 F.3d 490, 494 (4th Cir. 2001)).**

However, Friedman's claim is predicated on the theory of resulting trust which arises "'when a person becomes invested with the title to real property under circumstances which *in equity* obligate him to hold the title and to exercise his ownership for the benefit of another.'" ***Patterson v. Strickland*, 155 N.C. App. 776, 574 S.E.2d 715 (table), 2003 WL 138923, at *3 (2003) (quoting *Patterson v. Strickland*, 133 N.C. App. 510, 519, 515 S.E.2d 915, 920 (1999)) (noting the case was brought "on the equitable theories of constructive and resulting**

trusts.") (emphasis added); *accord, Meekins v. Box*, 152 N.C. App. 379, 567 S.E.2d 422 (2002). This is not tantamount to a "legal interest" under § 853(n)(6)(A).[3]

> [Friedman] relies on *Reckmeyer* for the proposition that any claim against [Defendant's] estate can be recovered against [her] forfeited property. But in *Reckmeyer*, the claimants were only able to recover because the defendant's "entire estate ha[d] been forfeited," which "[i]n practical terms" meant that "petitioners' interests necessarily l[ay] within that estate." The *Reckmeyer* court recognized that in a case like this one, involving forfeiture of only a specific item of defendant's property, claimants would often find themselves unable to prevail because their interests would not lie in the specific property subject to the forfeiture order:
>> Section 853 requires more than a showing of a legal interest in the debtor's property. *It requires that the interest exist in the property subject to forfeiture*. This second hurdle may well prove fatal to the claims of a number of general creditors. Although general creditors can claim an interest in their debtor's estates, they cannot claim an interest in any particular asset that makes up that estate.

***Schecter*, 251 F.3d at 496 (quoting *Reckmeyer*, 836 F.2d at 205-06).** Because Friedman cannot show that she has a legal interest in the property to be forfeited, she cannot withstand the motion to dismiss. While she has a general claim against her daughter's estate for $12,250, she cannot make out a legal claim sufficient to intervene in the forfeiture of the specific property at issue.

**IT IS, THEREFORE, ORDERED** that the Government's motion to dismiss is hereby **ALLOWED,** and the Petition of Pola Friedman is hereby **DISMISSED.**

---

[3]The Court is aware that an earlier district court decision in a related *Reckmeyer* case included language which may be construed as holding that an equitable interest satisfies § 853(n)(6)(A). ***See, United States v. Reckmeyer*, 628 F. Supp. 616, 622 (E.D. Va. 1986).** However, the Fourth Circuit's decision in the later *Reckmeyer* case cited above clarified the holding.

**Signed: July 27, 2005**

Lacy H. Thornburg
United States District Judge